IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

EUGENE RODNEY RODEBAUGH,      )
     )
         Movant,      )
     )
       v.      )    Case No. 10-4153-CV-C-NKL-P
     )
UNITED STATES OF AMERICA,      )
     )
        Respondent.      )
     )
     )

ORDER

Pending before the Court is Eugene Rodney Rodebaugh's Motion [Doc. # 1] to

Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. For the reasons set forth

below, the Motion is denied.

## I.     Background

On January 11, 2006, Eugene Rodebaugh ("Eugene") was indicted on the

following charges: Count One, conspiracy to distribute 1000 kilograms or more of

marijuana and 5 kilograms or more of cocaine, Counts Ten and Sixteen, use of a

communications facility to facilitate the drug conspiracy alleged in Count One; and

Count Twenty, possession with intent to distribute. On August 27, 2007, a jury found

Eugene guilty of all of the charges except the quantity of drugs for the conspiracy was set

at 50 kilograms rather than 1000 kilograms.

At his sentencing, the Court held that the conspiracy involved 768 kilograms of marijuana and found Eugene's total offense level to be a 32, including a two-point enhancement for possessing a firearm during the drug conspiracy. With a Criminal History Category of II, the Sentencing Guidelines provided a sentencing range of 135 to 168 months. The Court imposed a sentence of 144 months' imprisonment. Throughout the underlying criminal case and sentencing hearing, Eugene was represented by Brian Baehr.

The two-point gun enhancement was based on a shooting incident in Illinois in 2000. At trial David Latham testified that the Illinois shooting was related to the drug conspiracy. Latham testified that Rodney Keith Rodebaugh ("Keith") told him that Carl Pikey, Eugene's half-brother, had stolen money from Keith and fled to Illinois. Keith told Latham that "he was going to kill [Pikey]." [Trial Tr. 39:24]. Keith invited Latham to participate, but Latham declined. Later, Keith told Latham that he, his brother, David, and Eugene found Pikey, beat him up, and robbed him of marijuana, cocaine, and money. Keith also told Latham that Eugene shot Pikey during the brawl. At the sentencing hearing, Baehr withdrew Eugene's objection to the two point gun enhancement.

At sentencing, the Court computed the amount of drugs in the conspiracy that was foreseeable to Eugene and found him responsible for 768 kilograms.

Eugene filed a notice of appeal on March 17, 2008. The Eighth Circuit Court of Appeals affirmed Eugene's sentence.

**II.    Discussion**

Eugene asserts twenty-four grounds in his § 2255 Motion. All of Eugene's grounds relate to ineffective assistance of counsel. In order to succeed on a claim of ineffective assistance of counsel a petitioner must demonstrate (1) that his counsel's performance was constitutionally deficient and (2) that the deficiency prejudiced the outcome of the trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the performance prong, the petitioner must show that "trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence." *Nave v. Delo*, 62 F.3d 1024, 1035 (8th Cir. 1995) (quotation omitted). Under the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

### A. Ground One: Failure to Subpoena Ron Hoover to Testify at Trial

Eugene argues that Baehr rendered ineffective assistance of counsel when he failed to contact, interview, and subpoena Ron Hoover, to testify. Hoover, a private investigator, stated in an affidavit that he was hired by Eugene's attorney in the Illinois shooting incident to independently investigate the incident. Hoover stated that he took recorded statements from both Latham and Pikey. According to Hoover, Latham stated that he was unaware of the shooting incident in Illinois until his girlfriend told him about it, and that Keith never told him anything about the incident. Latham also denied that Keith told him that he was going to Illinois and "get" Pikey for stealing money. [Doc. #

1-1, at 7].  In an interview in September 2000, Pikey told Hoover that there had been "bad blood" in the family since childhood.  According to Hoover, Pikey stated that Eugene did not take part in the altercation and that Pikey was responsible for the gun discharging during the struggle.

Eugene asserts that although "[t]he decision not to call a witness is a 'virtually unchallengeable' decision of trial strategy," *United States v. Staples*, 410 F.3d 484, 488 (8th Cir. 2005) (quotation omitted), Baehr's failure to subpoena Hoover was not premised on trial strategy.  Baehr could not have made a reasoned decision to exclude Hoover's testimony because he did not interview Hoover or conduct any preliminary investigation into Hoover's potential testimony.

Eugene, however, fails to show that he was prejudiced by the absence of Hoover's testimony at trial.  Had Hoover testified that Pikey was responsible for the gun, it would have opened the door to evidence that Eugene plead guilty to discharging the firearm.  This conviction would have done far more damage to Eugene than Hoover's testimony would have done good.  In addition, Hoover's testimony would have had minimal effect on the jury's determination of Latham's credibility because Latham's statements concerning other aspects of the conspiracy were supported by other independent evidence.  Further, even if the jury found Latham's testimony not credible on this issue, there was other evidence of Eugene's involvement in the conspiracy: video recording of Eugene engaging in a drug transaction; several phone calls where Eugene set up drug

transactions; and the testimony of another witness, Craig Wansing, stating that Eugene stored marijuana at his home.

Because Eugene has failed to demonstrate that there is a reasonable probability that the outcome of his trial would have been different but for Baehr's failure to subpoena Hoover to testify, this ground for relief is denied.

**B.      Grounds Two and Ten: Failure to Subpoena Ron Hoover to Testify at the Sentencing Hearing and Withdrawal of Objection to Gun Enhancement**

Eugene argues that Baehr's failure to subpoena Hoover to testify at the sentencing hearing was constitutionally deficient because it would have informed the Court that the Illinois shooting was family related, not drug related. It would also have shown that Eugene was not involved in the shooting, and therefore, the two-point enhancement was not justified. However, if Hoover testified at the sentencing hearing, Eugene's guilty plea to aggravated discharge of a firearm would be relevant and would have completely discredited Pikey's statement. Eugene's use of Pikey's statement under these circumstances would be absurd. Thus, the outcome of Eugene's sentence would have been the same or worse if Hoover had testified.

Eugene also argues that Baehr should have contested Latham's testimony that the shooting was related to the drug conspiracy. Eugene contends that but for Latham's testimony, there would be no evidence linking the shooting to the conspiracy. But, if the Court were to conclude that the shooting was unrelated to the conspiracy, the shooting would have been counted as a prior offense. That shooting, plus Eugene's prior

manslaughter conviction, would have made him a career offender with a sentencing range of 168 to 210 months, which is greater than Eugene's current sentence. Thus, Eugene has failed to show that he was prejudiced by Baehr's handling of Hoover.

    **C.**    **Grounds Three, Four, and Six: Failure to Object When DEA Special Agent Steve Mattas Relied on Hearsay Evidence or Employed an Improper Methodology to form the Basis of his Testimony and Failure to Request a Jury Instruction That Would Adequately Instruct the Jury Concerning Expert Testimony**

    According to Eugene, Baehr should have objected to DEA Special Agent Steve Mattas's testimony about drug code language in intercepted phone calls. According to Eugene, the testimony was based on hearsay or improper methodology because he relied on information he received from "people I've talked to," "by talking to other people," and "all the information I had." [Trial Tr. 448:2, 15, 20]. However, the Eighth Circuit Court of Appeals held that Mattas's testimony did not substantially impact the jury. *United States v. Rodebaugh*, 561 F.3d 864, 869 (8th Cir. 2009). Thus, even if Baehr had objected to Mattas's testimony, it would not have changed the outcome of the trial. Furthermore, Mattas was testifying as an expert and experts can rely on information from others to form their opinions. *United States v. Placencia*, 352 F. 3d 1157 (8th Cir. 2003).

    Eugene argues that the Eighth Circuit's opinion concerned only Mattas's interpretation of phone conversations and does not apply to his interpretation of the video surveillance recording that showed a meeting between Eugene and a co-defendant outside a bar, and the co-defendant removing a box from his car and placing it into the trunk of Eugene's car. Mattas personally observed the events recorded on the video and

interpreted phone calls surrounding the meeting. [Trial Tr. 451:2-10; 453:1-16]. Thus, any "interpretation" by Mattas of the video recording is predicated on the recorded phone conversations.

Relatedly, Eugene argues that once Mattas stated that he based his opinion "by talking to other people," Baehr should have requested an instruction informing the jury that they could not give consideration to expert testimony based on the discussions with others. Such an instruction would have been rejected as vague or inaccurate. Further, because the Eighth Circuit has held that Mattas's testimony regarding the phone conversations did not substantially impact the jury, Baehr's failure to request an additional jury instruction would not have impacted the jury's decision.

### D. Ground Five: Failure to Interview Prosecution Witnesses, David Latham and Craig Wansing, Prior to Trial

Eugene argues that had Baehr interviewed Latham and Wansing before trial, they would have made statements to Baehr, which he then could have used to impeach their credibility. Specifically, Eugene asserts that Latham would have made inconsistent statements to Baehr that contradict his trial testimony regarding the Illinois shooting. Similarly, Eugene contends that Baehr would have elicited statements from Wansing that contradict his trial testimony that he obtained two twenty-five pound trash bags of marijuana from Eugene's residence, and that Eugene brought them from a back room and gave them to Wansing. However, even if Baehr should have interviewed Latham and Wansing before trial, Eugene has failed to show that he was prejudiced by Baehr's omission. *See Kramer v. Kemna*, 21 F.3d 305, 309 (8th Cir. 1994).

Eugene points to Hoover's testimony and a reference to a statement attributed to Wansing in Eugene's Presentence Investigation Report as evidence of the contradictory statements Baehr could have elicited. However, these statements are not evidence of what Wansing and Latham would have told Baehr. Because there is no evidence before the Court that indicates that Latham and Wansing would have stated anything to Baehr that would have been inconsistent with their trial testimony, he has failed to demonstrate any prejudice due to Baehr's failure to interview Latham and Wansing prior to trial. Relief is denied as to this ground.

### E. Ground Seven: Failure to Investigate Whether Eugene was Properly Indicted

Eugene states that no grand jury ballot sheet was attached to his indictment and contends that Baehr should have verified the grand jury voting record. Eugene also argues that he was denied his Fifth Amendment right to know that he was properly indicted by a grand jury.

In his brief, Eugene cites to Federal Rule of Civil Procedure 6(c), which requires that a record of the number of jurors concurring in every indictment be filed with the clerk. Eugene points to no evidence that such a filing was not made. Rather, he incorrectly assumes that because the ballot sheet is not part of his case record, then Rule 6(c) was not complied with. Eugene also points to no evidence that he was improperly indicted. Without such evidence of impropriety, Eugene has failed to demonstrate that his Fifth Amendment rights were violated. Namely, Eugene cannot show that he was improperly charged and that a trial should not have occurred.

8

Eugene appears to separately request assurance from the Court that he was indicted in accordance with the law.  However, he presents no evidence nor does he allege why the indictment returned by the grand jury may be invalid.  Alleged errors in grand jury proceedings cannot normally be raised in a section 2255 motion, barring exceptional circumstances.  *Little v. United States*, 524 F.2d 335, 336 (8th Cir. 1975).  Eugene identifies no "exceptional circumstances."  The Court declines to order an in camera review of the grand jury ballot sheet absent a showing that the indictment was improperly returned.  *See United States v. Marshall*, 526 F.2d 1349, 1360 (9th Cir. 1975).  The Court notes that the indictment signed by the foreperson of the grand jury and returned to the Court is sufficient assurance that Eugene was properly indicted.

**F.     Grounds Eight and Sixteen: Failure to Obtain the Prior Inconsistent Statements Made by Craig Wansing and Failure to Request Jencks Act Material**

Eugene asserts that Baehr failed to obtain, and the Government failed to disclose, a purportedly inconsistent statement attributed to Wansing in Eugene's Presentencing Report.  The report indicates that in 2005, Wansing disclosed to investigators that Wansing had obtained from Eugene ten pounds of marijuana out of a bag that contained approximately fifty pounds of marijuana and that Eugene helped him load the marijuana into Wansing's vehicle.  At trial, Wansing testified that he obtained two twenty-five pound trash bags of marijuana from Eugene's home, and that Eugene had brought them from a back room and gave them to Wansing.

As a preliminary matter, the Court notes that the Government produced Jencks material ten days before trial, as ordered by the Court. Eugene does not dispute this. What Eugene appears to argue is that the statement attributed to Wansing in Eugene's Presentencing Report indicates that a January 2005 statement of Wansing's was not included in the material disclosed by the Government. However, Baehr cannot be ineffective for failing to ask for a report that is only referenced in a presentence report prepared after trial. He had no prior notice that the Government had not given him everything required by the Court's order. Additionally, to the extent that Eugene argues that Baehr should have interviewed Wansing prior to trial to obtain an inconsistent statement from him, the Court has already addressed the issue and denied this ground for relief in Part II.D.

Eugene appears to further argue that the Government's failure to disclose Wansing's 2005 statement, allegedly in violation of the Jencks Act or *Brady v. Maryland*, 373 U.S. 83 (1963), prejudiced him at trial. The Government admits that the origin of Wansing's statement in Eugene's presentence report is unclear. None of the Government's interviews with Wansing reference Wansing obtaining marijuana from Eugene's home. Nonetheless, Eugene does not show how the government's failure to produce the statement before trial prejudiced him. Even if the jury were to discount Wansing's credibility based on the possible inconsistencies between his testimony and his 2005 statement, there remain other evidence of Eugene's involvement in the conspiracy: video recording of Eugene engaging in a drug transaction; several phone calls where

Eugene set up drug transactions; the Illinois shooting incident; and Latham's testimony that marijuana was stored in Eugene's home.  Furthermore, Eugene has failed to show that the Government's failure to produce one Jencks Act statement of unknown origin is an issue properly raised in a § 2255 motion.

### G.   Grounds Nine and Seventeen: Failure to Object to Evidence Obtained from the Government's Use of a Wiretap and Failure to File a Motion to Suppress the Government's Video Evidence

Eugene asserts that the Government's wiretaps were illegal and that therefore Baehr rendered ineffective assistance when he failed to object to evidence obtained from the wiretap.  Yet, Eugene provides no evidence that the wiretaps were illegally obtained.  The Government states that the wiretaps were authorized in a letter dated May 19, 2005, and signed by Deputy Assistant Attorney General John C. Keeney.  In response, Eugene argues that the Government has not produced the letter nor provided evidence that Mr. Keeney has the authority to approve wiretaps.

As the movant, Eugene has the burden of proof.  He has presented no evidence of wrongdoing by the Government.  He points to no law that requires approvals for wiretaps be filed with a particular defendant's docket sheet.  He presents no evidence that the wiretaps were not properly approved.  Thus, not only was Baehr not required to object to the wiretap evidence when there was no showing that they were illegal, Eugene has failed to show how he was prejudiced by Baehr's inaction.

Eugene also argues that Baehr provided constitutionally deficient representation by failing to file a motion to suppress the Government's video evidence.  Eugene maintains

that silent video surveillance requires a warrant, absent consent from one of the parties being videotaped, and cites to *United States v. Corona-Chavez*, 328 F.3d 974 (8th Cir. 2003) and *United States v. Falls*, 34 F.3d 674 (8th Cir. 1994), for support. These cases, however, do not bolster Eugene's argument. In *Corona-Chavez*, defendants had been videotaped in a hotel room belonging to a consenting third party. In addressing Corona's argument that the video recording was in violation of both the Fourth Amendment and Title I of the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510-2522, the court reiterated that Title I neither regulates nor prohibits silent video surveillance. *Id.* at 980 (citing *United States v. Falls*, 34 F.3d 674, 678-80 (8th Cir. 1994)). Furthermore, the Fourth Amendment does not protect people from observation in places where they have no reasonable expectation of privacy, *id.* at 980 (citing *Minnesota v. Carter*, 525 U.S. 83, 88-91 (1998)). *Corona-Chavez* does not stand for the proposition that Title I applies to video surveillance, or that a warrant is necessary to videotape non-consenting individuals who are in places where they have no expectation of privacy.

Here, Eugene clearly lacked any reasonable expectation of privacy. The video surveillance was of Eugene's meeting with a co-defendant in the parking lot of a bar, a publicly accessible place, in the middle of the afternoon. *See Katz v. United States*, 389 U.S. 347, 351 (1967) ("What a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection.") No warrant is required for the videotaping of public observations. Thus, any motion to suppress the video surveillance on the grounds that a warrant was required would have been denied.

**H.      Ground Eleven: Failure to Interview Darla Cavin and Present Her Testimony**

Eugene states that Baehr rendered ineffective assistance of counsel when he failed to subpoena Darla Cavin, the wife of a co-defendant, to testify at trial. Cavin had been subpoenaed by another co-defendant, yet failed to arrive at the courthouse to testify. According to Cavin, she had arrived at the courthouse the morning she was required to appear in court, but left after family members of government witnesses, such as Latham, intimidated her. In an offer of proof, Cavin stated that she would have testified as to the character of the Government's witnesses, including Latham. Even assuming that this testimony would not have been cumulative, Eugene fails to demonstrate prejudice by its omission. He has not presented evidence to the Court how a subpoena by Baehr would have compelled Cavin to testify when a subpoena by another defendant failed to compel her testimony.

Eugene suggests that the Government played a hand in preventing Cavin from testifying. In support, he points to the Government's statement during Cavin's offer of proof that it would "try to get to the bottom of what happened" [Doc. # 876, at 11:16-17] yet according to Eugene the Government failed to launch an investigation and attempted to cover up the incident. These conclusory statements by Eugene, however, are not evidence. They are mere speculation, and without more, Eugene cannot demonstrate that the Government improperly prevented Cavin from testifying nor "covered up" the incident. Even if the Government failed to investigate the alleged threats made to Cavin, Eugene directs the Court to no law, nor is the Court aware of any, that suggests that

Eugene's rights were violated by the Government's failure to conduct a voluntary investigation or that this issue has anything to do with Eugene's claim that Baehr was ineffective.

## I. Ground Twelve: Failure to Request Lesser Included Offense Instructions as to Counts One and Twenty of the Indictment

Eugene claims that the evidence presented at trial establishes that a jury could have found him guilty on Count I (conspiracy to distribute) of the lesser included offense of conspiracy to possess. He also claims that on Count Twenty the jury could have found him guilty of simple possession of marijuana instead of possession with intent to distribute.

A defendant is entitled to a lesser-included offense instruction when: (1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) there is some evidence which would justify conviction of a lesser offense; (4) the proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense; and (5) there is mutuality, i.e., a charge may be demanded by either the prosecution or defense. *United States v. Ziesman*, 409 F.3d 941, 949 (8th Cir. 2005) (citation omitted).

According to Eugene, evidence at trial demonstrated a reasonable probability that the jury would have convicted him of the lesser offense of possession and acquitted him of the greater offenses of distribution. Specifically, Eugene points to the following evidence: (1) testimony by Latham that he was not aware of Eugene's involvement in any

sort of drug activity and that he was unsure of whether Eugene had knowledge that drugs were stored at his home; (2) testimony by Wansing that he had acquired two twenty-five pound bags of marijuana from Eugene's residence, which Eugene argues is inconsistent with a prior statement made by Wansing; (3) testimony by Mark Cavin that Eugene bought one to two pounds of marijuana from Keith only once or twice; (4) no corroboration of the nature of the videotaped scene between Eugene and a co-defendant other than the interpretation offered by Agent Mattas; (5) search of Eugene's home resulting only in finding 297 grams of marijuana that Eugene admitted was his; and (6) testimony by Agent Mattas that the evidence only showed that Eugene was a buyer of marijuana.

As to Count Twenty, there was overwhelming evidence that Eugene was involved in the distribution of drugs, not just possession. Latham's testimony regarding the Illinois incident where Eugene had shot Pikey and Keith had robbed him for some drugs and money; taped phone conversations where Eugene asked Keith if he needed Eugene to pick up more marijuana for him [Trial Tr. 337:13-18], and where Eugene asked Keith if he wanted one of the two pounds of marijuana Eugene had acquired [Trial Tr. 374:12-19]; and discovery of distribution amounts of marijuana in Eugene's home. The totality of the evidence does not justify Eugene's conviction of the lesser offense of possession even considering the evidence identified by Eugene.

As to Count One, there is no evidence to show that any conspiracy among these defendants involved possession, not distribution of drugs. No reasonable jury could have

concluded that the purpose of the conspiracy was to just possess marijuana. Therefore, even if Baehr had requested such a lesser included instruction, it would have been rejected.

    **J.**    **Grounds Thirteen, Fourteen, and Twenty-Two: Failure to Object to the Inclusion of Jury Instructions That were Improperly Classified as Lesser Included Offenses; Failure to Object to the Constructive Amendment of the Indictment; and Failure to Object to Jury Instructions that Did Not Inform the Jury How Sentencing Would Proceed**

Eugene argues that the inclusion in the jury instructions regarding the conspiracy charge against him for distribution and possession with the intent to distribute marijuana, were (1) improperly classified as lesser included offense instructions, (2) amounted to an improper constructive amendment of the indictment, (3) failed to inform the jury that the drug quantity determined by them would not necessarily be applied at sentencing, and (4) should have been objected to by Baehr for all of these reasons.

Instruction 25 listed the four elements of the crime of conspiracy. The jury was instructed that if it found the first three elements beyond a reasonable doubt, it must then determine the amount of marijuana involved in the conspiracy. The jury was given the option of 100 kilograms or more; 50 kilograms or more; or any amount of marijuana. Eugene states that the references to smaller amounts of marijuana were not lesser included offenses. Eugene is incorrect. The Eighth Circuit has recognized that offenses involving lesser drug amounts than charged in the indictment are lesser included offenses. *See, e.g.*, *Theus v. United States*, 611 F.3d 441, 444 (8th Cir. 2010); *Schmuck v. United States*, 489 U.S. 705, 716 (1989); *United States v. Dodd*, 473 F.3d 873, 876 (8th Cir.

2007). Further, the Eighth Circuit Model Jury Instructions suggest lesser included offense instructions similar to Instruction 25. *See Eighth Circuit Manual of Model Jury Instructions–Criminal* Instrs. 6.21.841A.1 and 6.21.841A.1(a). Thus, Baehr had no reason to object to these jury instructions.

Relatedly, Eugene argues that the inclusion of lesser included offense instructions and the absence of cocaine from the jury instructions despite its inclusion in the indictment, constituted "constructive amendment" of the indictment. As previously stated, it was proper to give the lesser included offense instruction and their inclusion did not constitute a constructive amendment of Eugene's indictment. An instruction may not broaden the indictment but it can narrow it. *United States v. Gill*, 513 F.3d 836, 849 (8th Cir. 2008).

Eugene additionally contends that Instruction 25 is faulty because the jury was not told that Eugene's sentencing could be based on higher drug quantities than found by the jury. Sentencing is a matter for the court and it would have been improper to discuss sentencing in an instruction.

### K. Ground Fifteen: Failure to Advise Eugene of the Consequences of Proceeding to Trial

Eugene asserts in an affidavit that Baehr "never explained anything to me about enhancements" and that "[Baehr] never explained to me that if I was convicted, even for a small amount of marijuana, that I could be held responsible for the drugs that everyone [sic] else was involved with." [Doc. # 1-1, at 2]. Eugene explains that had he been properly advised of the consequences of proceeding to trial, he would have taken the plea

deal offered by the Government. According to Eugene, the Government had agreed to a two-year sentence, but he refused the deal because he "believed that even if I were convicted at my trial that my sentence would be light." [Doc. # 1-1, at 2].

The Court notes that in *Engelen v. United States*, 68 F.3d 238 (8th Cir. 1995), the Eighth Circuit Court of Appeals "recognize[d] that a defendant, after rejecting the proposed plea bargain and receiving a fair trial, may still show prejudice if the plea bargain agreement would have resulted in a lesser sentence." *Id.* at 241 (citations omitted). Here, however, even if the Court accepts as true Eugene's assertions regarding his counsel's failure to advise, he has failed to demonstrate any prejudice. While the Government may have agreed to recommend a two-year sentence, the Court retained discretion to determine an appropriate sentence taking into account relevant conduct. Eugene has presented no evidence of the charge to which he would have plead guilty or the relevant conduct the Court could have considered that would be different from what the Court did consider at his sentencing. Thus, even if Eugene had been ill-advised by his attorney regarding the consequences of proceeding to trial, he has failed to establish that his sentence would have been less than that which he received.

### L. Ground Eighteen: Failure to Object to the Admissibility of Latham's Testimony Regarding the Illinois Shooting

Eugene asserts that Baehr should have objected when Latham testified that Eugene shot Pikey during the Illinois incident. [Trial Tr. 41:5-9]. Eugene appears to argue that Latham's testimony about Keith's statement to him regarding the Illinois incident was inadmissible hearsay because the statement was not made in furtherance of the

conspiracy.  Eugene claims that had Baehr objected to this statement, the Court would have sustained the objection.  However, Eugene points to no such evidence that the Court would have made that ruling.  On the contrary, the Court found that Latham's testimony regarding his conversation with Keith about the Illinois incident was both relevant and procedurally proper.  [Trial Tr. 39:15-17; 40:19-41:2].  Eugene's bare assertion that Keith's statement to Latham regarding the shooting was not made in furtherance of the conspiracy is not supported by any evidence.

### M.     Ground Nineteen: Failure to Call Eugene to Testify at Trial

Eugene states in an affidavit that he "told [Baehr] that I was going to testify and the subject was closed."  [Doc. # 1-1, at 1].  Eugene insists that he relied on Baehr to ensure that he would be called to testify and that he "did not realize until it was too late that the trial had ended and my opportunity to testify was gone."  [Doc. # 1-1, at 1].  Eugene points to the fact that co-defendants who testified or had family members testify had more favorable outcomes.  Thus, Eugene argues that had Baehr called Eugene to testify as Eugene had instructed, it is reasonably likely that the outcome of the trial would have been more favorable to Eugene.

Even if the Court were to accept Eugene's assertion that he informed Baehr of his decision to testify and that Baehr failed to call him as a witness, Eugene fails to demonstrate to the Court that he did not waive his right to testify.  It is well settled that "a knowing and voluntary waiver of the right [to testify] may be found based on a defendant's silence when his counsel rests without calling him to testify."  *Frey v.*

*Schuetzle*, 151 F.3d 893, 898 (8th Cir. 1998) (citation omitted). Had Eugene intended to testify, he would have acted affirmatively when his counsel indicated no witnesses were to be called. *United States v. Bernloehr*, 833 F.2d 749, 752 (8th Cir. 1987).

Eugene claims that he was unaware that his counsel rested without calling him to testify because Baehr did not state that he "rested." Rather, Baehr only stated that he would not be calling any witnesses. [Trial Tr. 949:22]. To "rest" one's case means that no further evidence will be introduced, such as the testimony of additional witnesses. Baehr's statement that he would not call any witnesses is non-legal jargon expressing that he "rested." Thus, Eugene's argument that he was not aware that he would not be called to testify because Baehr failed to use the word "rest" is without merit. Moreover, prior to Baehr's statement, counsel for a co-defendant who testified stated: "Your Honor, we will call no further witnesses. We will rest." [Trial Tr. 949:19-20]. After Baehr's statement, counsel for another co-defendant stated: "No witnesses, in addition to the cross-examination that we have shown during the rest of the case. We'll rest." [Trial Tr. 949:24-950:1]. Eugene fails to explain to the Court, given these statements, how he remained unaware that his opportunity to testify had passed.

Eugene states that at trial, he informed the Court that he wished to testify. The Court finds no such statement by Eugene in the record. The Court was informed that Eugene "may testify." [Trial Tr. 752:19-20]. And the Court said: "[I]f you eventually decide to testify, [do you understand you will be giving up protection given you by the United States Government]. [Trial Tr. 754:16-18]. Eugene replied: "Yes, ma'am." Thus,

the record fails to show that Eugene communicated to the Court he was going to testify. Instead, Eugene in his petition cites a section where the Court is addressing Mr. Weddington, not Eugene.

Eugene adds that speaking up before the Court is an "undue burden" to place on a defendant where a certain decorum is expected and defendants are not typically allowed to address the Court directly. However, the case law is clear in the Eighth Circuit that Eugene knowingly and voluntarily waived his right to testify when he remained silent after Baehr stated "no witnesses."

Finally, had Eugene testified, the jury would have learned of his conviction for shooting Mr. Pikey. Thus, it is more likely than not that he would also have been convicted if he had testified.

### N.     Ground Twenty: Failure to Request a Severance

Eugene presents to the Court an affidavit by Keith stating that had Eugene's trial been severed, Keith would have testified that he never told Latham about the Illinois shooting incident and that he never stored marijuana in Eugene's home. Eugene argues that because Baehr failed to request a severance, Keith's testimony was unavailable to counter the testimony of other witnesses regarding Eugene's involvement in the conspiracy. What Eugene fails to show in his argument is how Baehr's omission prejudiced Eugene. Eugene presents no evidence that the Court would have granted severance. Indeed, the Court had denied all requests for severance made by other co-defendants.

Eugene argues that his situation is unique from that of his co-defendants' because none of the co-defendants requested severance based on exculpatory testimony. *United States v. Mickelson*, 378 F.3d 810, 818 (8th Cir. 2004) ("[T]o warrant severance a defendant must show real prejudice. . . . [A defendant] must show that it is likely his co-defendant actually would have testified and that his testimony would have been exculpatory.") (internal quotations omitted). However, Keith's proffered testimony would not have been exculpatory. Even if Keith had testified that he did not tell Latham about the Illinois shooting incident, he would have been directly questioned about the incident and whether Eugene had participated. Keith would have either responded that Eugene did participate or that he did not participate. Any statement by Keith that Eugene did not participate would have opened the door for the introduction of Eugene's guilty plea to the Illinois shooting. As such, Keith's testimony would not have been exculpatory, but rather, would have bolstered Latham's testimony regarding the Illinois shooting. Additionally, Eugene does not show how any testimony by Keith asserting that he did not store marijuana at Eugene's home would have overcome other evidence of Eugene's involvement in the conspiracy. Because Eugene has not demonstrated a reasonable probability of a different outcome had his counsel requested a severed trial, this ground for relief is denied.

## O.    Ground Twenty-One: Failure to Call Sandra Rodebaugh to Testify at Trial

Eugene presents an affidavit by his wife, Sandra Rodebaugh ("Sandra"), stating that she informed Baehr during trial that she could testify that Latham had rarely visited

their home, that he never stored marijuana there, and that Wansing's testimony was untrue. [Doc. #1-1, at 11]. Sandra states in her affidavit that in addition to what she informed Baehr about Latham's testimony, she would have testified that Wansing "never came to our home and picked up marijuana and that we did not even know this person." [Doc. # 1-1, at 12]. Eugene states that Baehr did not call Sandra to testify despite his request that he do so, and argues that had Baehr done as requested, there is a reasonable probability that the jury would have come to a different decision. Eugene points out that all of the co-defendants whose wives had testified on their behalf were acquitted.

"The decision not to call a witness is a 'virtually unchallengeable' decision of trial strategy." *United States v. Staples*, 410 F.3d at 488. Further, there is no reasonable probability that Sandra's testimony would have altered the outcome of the trial. She is obviously biased and her testimony would have only highlighted Latham and Wansing's testimony. She would also have acknowledged that there was some amount of marijuana in the home, and that Eugene obtained marijuana from Keith. [Doc. # 1-1 at 12].

Eugene's claims that Baehr did not interview Sandra and was unaware of the content of her testimony is refuted by Sandra's statements in her affidavit that she informed Brian that she could testify that Latham had rarely visited their home and that he never stored marijuana there. Sandra's affidavit also states that she told Baehr that Wansing's testimony was untrue.

### P. Ground Twenty-Three: Failure to Conduct Any Meaningful Investigation

Eugene asserts that if the Court holds an evidentiary hearing, three co-defendants, in addition to Keith, are willing to testify that Eugene was not involved in the conspiracy. Eugene argues that had Baehr conducted a meaningful investigation by interviewing these co-defendants, he would have discovered that they all would have testified that Eugene was not involved in the conspiracy. However, Eugene fails to present to the Court the specific content of the potential testimony aside from the general conclusion that Eugene was "not involved in the conspiracy." Without being informed of such content, the Court cannot determine if the testimony would have a reasonable probability of affecting the trial's outcome. Additionally, Eugene provides no affidavits by these individuals or other evidence that support Eugene's assertion that they would have testified on his behalf at trial. Thus, Eugene has failed to make a substantial showing that Baehr's failure to interview these co-defendants prejudiced the outcome of the trial. Further, to the extent that Eugene reiterates arguments for relief previously raised, the Court has already addressed these arguments.

Q. **Ground Twenty-Four: Failure to Object to the Government's Use of the Word "Facilitate" as Applied to 21 U.S.C. § 843(b)**

Eugene argues that the taped phone conversations between he and Keith evidence only that Eugene was purchasing marijuana for personal use and that under *Abuelhawa v. United States*, 129 S. Ct. 2102 (2009), using a telephone to make a misdemeanor drug purchase does not facilitate felony distribution in violation of 21 U.S.C. § 843(b). Thus, Baehr should have objected to the Government's argument that the calls were evidence of facilitating a conspiracy. According to Eugene, had Baehr objected, the issue would have

been preserved for appeal and Eugene would have benefitted from the Supreme Court's ruling in *Abuelhawa*.

Eugene's argument, however, does not comport with the requirements of *Strickland*. Eugene must first show that Baehr's conduct was unreasonable. It was not. At the time of the trial, *Abuelhawa* had not yet been decided. Eugene points to no case law in the Eighth Circuit nor any legal professional standard, in effect at the time of the trial, which indicates that Baehr should have objected to this evidence. Eugene cannot fault his attorney for not being prescient.

More importantly, the jury clearly found he was not a buyer of marijuana for personal use. Indeed, one of the phone conversations between Eugene and Keith concerned pounds of marijuana, with no evidence that such a large quantity was merely for personal use.

Eugene appears to argue that the jury was more likely to convict him of the conspiracy charge because of the existence of his section 843(b) charges, but fails to explain why this would be so. The Court will not speculate as to Eugene's argument because it is his burden to present it to the Court.

## III.    Conclusion

Accordingly, Eugene's Motion [Doc. # 1] to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 is DENIED.

IT IS SO ORDERED.

         s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  February 28, 2011
Jefferson City, Missouri